508 S.E.2d 21

**Linda F. OSTEEN, Respondent,**

v.

**GREENVILLE COUNTY SCHOOL DISTRICT,**
**Employer and Self–Insurer, Petitioner.**

No. 24843.

Supreme Court of South Carolina.

Heard Nov. 19, 1997.

Decided Oct. 26, 1998.

Rehearing Denied Dec. 2, 1998.

44

Richard V. Davis, of Christian & Davis, of Greenville, and J. Mark Hayes II, of Harrison and Hayes, of Spartanburg, for respondent.

Richard B. Kale, Jr., and Jeffrey S. Jones, both of Haynsworth, Marion, McKay & Guerard, of Greenville, for petitioner.

## ON WRIT OF CERTIORARI TO
## THE COURT OF APPEALS

WALLER, Justice:

We granted certiorari to review the Court of Appeals' opinion in *Osteen v. Greenville County School District,* 323 S.C. 432, 475 S.E.2d 775 (Ct.App.1996). We reverse.

### FACTS

Linda Osteen ("Osteen") was an attendance clerk at Mountain View Elementary School. She worked Monday through Friday, 8:00 a.m. to 4:00 p.m. Her duties included responsibility for attendance; helping out in the office; running errands to classrooms; assisting in the health room; checking in and retrieving supplies; and delivering mail to the teachers' lounge and the cafeteria.

In the middle of August 1992, Osteen planned a week-end picnic with her family at Lake Keowee. On Friday, August 21, 1992, Osteen brought an ice chest with her to work which she intended to fill with ice from the school cafeteria for use at her picnic. At approximately 3:00 p.m., Osteen, accompanied by her son, retrieved the ice chest from her car and took it to

the school cafeteria. After filling the cooler with ice, she and her son carried it back to her car. When Osteen picked up the chest to put it into her car, she injured her back.[1]

Thereafter, Osteen filed a workers' compensation claim. The Single Commissioner found Osteen had sustained a compensable injury under S.C.Code Ann. § 42–1–160 (1985). The Full Commission reversed, finding Osteen's injury did not arise out of and in the course of her employment. The Circuit Court affirmed the Panel's finding that Osteen's injury was not compensable. A majority of the Court of Appeals reversed; it held Osteen's injury was by accident arising out of and in the course of her employment.

## ISSUES

Did the Court of Appeals err in holding Osteen's injury was by accident arising out of and in the course of her employment?

## DISCUSSION

The Court of Appeals held Osteen's injury fell squarely within the "personal comfort" doctrine. This was error.

■ The personal comfort doctrine aids a court in determining whether, and under what circumstances, entirely personal activities engaged in by an employee at work may be considered incidental to employment. See *Mack v. Post Exchange*, 207 S.C. 258, 35 S.E.2d 838 (1945); Arthur Larson, The Law of Workmen's Compensation, § 21.00 *et seq.* (1996). In *Mack v. Post Exchange*, we adopted the personal comfort doctrine by stating:

> **Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service,** and injury sustained in the performance thereof is deemed to have arisen out of the employment. A

---

1. Due to the injury, Osteen was out of work from September 1, 1992 until February 14, 1993. She then returned to work for approximately three weeks. She was again out of work from March 9, 1993 until May 3, 1993. She had surgery performed on her lower back on March 11, 1993. After returning to work on May 3, she remained for the rest of the school year. Her last day of work was June 17, 1994.

man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work. . . . **That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers.** At the same time injuries occasioned by them are accidents resulting from the employment.

*Mack*, 207 S.C. at 264–65, 35 S.E.2d at 840 (emphasis supplied). In *Mack*, the employee arrived on work premises approximately one-half hour before work began. While waiting, he smoked a cigarette and accidentally burned his leg when the cigarette ignited his trousers. In finding his injuries compensable under the Workers' Compensation Law, we held that smoking was incidental to his employment: "Tobacco is universally recognized to be a solace to him who uses it, and may be that such a one, unless he finally shakes off the habit, cannot perform the labors of his life as well without it as with it." *Id.* at 265, 35 S.E.2d at 841.

In *McCoy v. Easley Cotton Mills*, 218 S.C. 350, 62 S.E.2d 772 (1950), we again addressed the question of whether an employee's injury occurring during a smoking break was compensable. We stated that it was "well settled that an employee, in order to be entitled to compensation, need not necessarily be engaged in the actual performance of work at the time of injury; it is enough if he is upon his employer's premises, occupying himself consistently with his contract of hire in some manner pertaining to or incidental to his employment." *Id.* at 355–56, 62 S.E.2d at 774; *see also Beam v. State Workmen's Compensation Fund*, 261 S.C. 327, 200 S.E.2d 83 (1973). In *McCoy*, the employee, while on his break, was accidentally struck in the eye by a copper pipe thrown by another employee. We again concluded that smoking was incidental to the worker's employment, and therefore, the injury occurring during such break was compensable.

█] However, the personal comfort doctrine has consistently been limited to imperative acts such· as eating, drinking, smoking, seeking relief from discomfort,[2] preparing to begin

---

2. This includes getting warm, getting fresh air or relief from heat, and seeking toilet facilities.

or quit work, and resting or sleeping. *See* Larson, §§ 21.00–21.714. In this case, the Court of Appeals cited numerous cases from other jurisdictions to support its holding that Osteen's activity came within the personal comfort doctrine. *Osteen*, 323 S.C. at 437–38 nn. 1–7, 475 S.E.2d at 778–79 nn. 1–7. However, all of the cited cases fit into one of the limited categories listed above.[3] This case, on the other hand, does not fit into any of these categories: Osteen was not smoking, resting, sleeping, eating, drinking, seeking relief from discomfort, or preparing to begin or quit work when she was injured. Thus, we find Osteen's activity was not a "natural incident" of her employment. As stated by Judge Huff in his dissent, "[o]btaining ice for a family picnic the following day was not 'necessary to the life, comfort, and convenience' of [Osteen] while she was at work." *Osteen*, 323 S.C. at 445, 475 S.E.2d at 782. Accordingly, we find the Court of Appeals erred in applying the personal comfort doctrine to the circumstances of this case.

Further, the Court of Appeals cited *Cauley v. Ross Builders Supplies, Inc.*, 238 S.C. 38, 118 S.E.2d 879 (1961) to hold that "even if the activity was entirely personal to [Osteen], her injury is compensable because the deviation from her employment was insubstantial." *Osteen*, 323 S.C. at 440, 475 S.E.2d at 780. We find *Cauley* inapposite to this case.

In *Cauley*, this Court adopted Professor Larson's view that there are circumstances when injuries arising out of acts outside the scope of an employee's regular duties may be compensable. These circumstances have been applied to: (1) acts benefiting co-employees; (2) acts benefiting customers or

---

**3.** *Indus. Comm'n v. Golden Cycle Corp.*, 126 Colo. 68, 246 P.2d 902 (Colo.1952) (injured while eating lunch); *Piper v. Neighborhood Youth Corps*, 90 S.D. 443, 241 N.W.2d 868 (S.D.1976) (drowned while sleeping during lunch break); *Am. Motors Corp. v. Indus. Comm'n.*, 1 Wis.2d 261, 83 N.W.2d 714 (Wis.1957) (injured during lunch hour); *Geibig v. Ann Arbor Asphalt Constr. Co.*, 238 Mich. 560, 214 N.W. 90 (Mich.1927) (injured while trying to get warm); *Pan Am. World Airways v. Wilmot*, 492 So.2d 1373 (Fla.Dist.Ct.App.1986) (injured while lighting a cigarette); *Ford v. Bi–State Dev. Agency*, 677 S.W.2d 899 (Mo.Ct.App.1984) (injured while going to use the restroom and get a cup of coffee); *Spratt v. Duke Power Co.*, 65 N.C.App. 457, 310 S.E.2d 38 (N.C.Ct.App.1983) (injured while going to get gum at end of dinner hour).

strangers; (3) acts benefiting claimant;[4] and (4) acts benefiting employer privately. Larson, §§ 27.00–27.48. In *Cauley*, we adopted Larson's rule for injuries occurring while assisting co-employees: "[An employee's] injury was ... not compensable unless the deviation from the course of employment was so trivial that it could be fairly characterized as insubstantial." *Cauley*, 238 S.C. at 40, 118 S.E.2d at 880; Larson § 27.15, at 5–376. In *Cauley*, the employee was injured while trimming a piece of board to make a wedge for a fellow employee. We found the employee's activity was an insubstantial deviation from his work as a carpenter, and thus, the injury arising therefrom was compensable under the Workers' Compensation Law.

Unlike Osteen, the employee in *Cauley* was trained as a carpenter, and the injury occurred during an activity which was incidental to his normal employment. In fact, Cauley was in the process of fashioning a block of wood pursuant to his job assignment when he took a moment to make from it a wedge for his co-employee. We agree with Judge Huff's dissent that *Cauley* is simply inapposite here.

█ Finally we find no basis on which to hold Osteen's injury occurred "by accident arising out of and in the course of her employment."

█ The South Carolina Workers' Compensation Act requires that, to be compensable, an injury by accident must be one "arising out of and in the course of employment." S.C.Code Ann. § 42–1–160 (1985). The two parts of the phrase "arising out of and in the course of employment" are not synonymous. Both parts must exist simultaneously before any court will allow recovery. *Hicks v. Piedmont Cold Storage Inc.*, 324 S.C. 628, 479 S.E.2d 831, 834 (Ct.App.1996).

---

4. Notably, Professor Larson further subdivides this category into the following: (a) self-education, (b) inoculations and employment health tests, (c) union activities, and (d) public service activities. Clearly, Osteen was not engaged in any of these activities and, therefore, this subdivision is inapplicable to the present case. Further, as noted by Professor Larson, where the beneficiary of the activity is solely the claimant himself, compensation will ordinarily be denied. Larson, § 27.31(b) at 5–416 (emphasis supplied). Here, Osteen's actions in obtaining ice for her family picnic were clearly beneficial solely to Osteen.

"Arising out of" refers to the injury's origin and cause, whereas "in the course of" refers to the injury's time, place, and circumstances. *Howell v. Pacific Columbia Mills*, 291 S.C. 469, 472, 354 S.E.2d 384, 385 (1987). For an injury to "arise out of" employment, the injury must be proximately caused by the employment. *Douglas v. Spartan Mills*, 245 S.C. 265, 269, 140 S.E.2d 173, 175 (1965). **The injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury.** *Id.* (Emphasis supplied).[5] Here, there is simply no causal connection between Osteen's employment and her injury; her employment in no way required her to be placing a chest full of ice, for use over the weekend, into the trunk of her vehicle. Accordingly, under South Carolina law,[6] we find her injury is not compensable.[7]

---

5. As noted previously, there are certain circumstances, such as the "personal comfort" doctrine and those enumerated by Professor Larson (which this Court adopted in *Cauley*) under which an injury may be compensable notwithstanding it was outside the scope of an employee's regular duties. However, as noted, no such circumstances are applicable here.

6. It is unnecessary to resort to North Carolina caselaw to resolve the present case. In any event, however, the North Carolina case cited by the dissent to hold Osteen's injury compensable is factually and legally distinguishable. *Watkins v. City of Wilmington*, 290 N.C. 276, 225 S.E.2d 577 (N.C.1976) involved a fireman who, while on his lunch hour at the fire station, attempted to fix a co-employee's automobile. Watkins was required to remain on the fire station premises during his 24 hour shifts, and firemen were permitted to perform minor repairs to their automobiles on the premises which was, to "an appreciable extent," a benefit to the fire department in that by keeping their automobiles in working order, firemen could use them to report to duty when they were off duty in the event of an emergency. Unlike the present case, the plaintiff in *Watkins* was benefitting both a co-employee and his employer so as to fall within Larson's exceptions for "other acts outside regular duties." Osteen, on the other hand, was engaged in an activity which was not incidental to her employment, and which was not beneficial to either her co-employees or her employer; on the contrary, Osteen was obtaining ice strictly for her own personal use over the weekend.

7. Finally, the dissent asserts that by acquiescing in Osteen's conduct, the school was benefited with "improved employer/employee relations." The mere fact that the school **permitted** employees to obtain ice is simply insufficient to supply the requisite causal connection. Even an activity which is "encouraged" by an employer is insufficient to render

The judgment below is

**REVERSED.**

FINNEY, C.J., and MOORE, J., concur.

TOAL and BURNETT, JJ., dissenting in a separate opinion.

TOAL, Justice:

I respectfully dissent from the majority's determination that Osteen's injury is not compensable under the South Carolina Workers' Compensation Law. I would hold that Osteen's injury was by accident arising out of and in the course of her employment and therefore compensable. Thus, I would affirm the Court of Appeals.

In my view, there are two basic problems with the majority's analysis. First, I believe the majority, in effect, incorrectly characterizes the personal comfort doctrine and certain other acts outside an employee's regular duties as exceptions to the "arising out of" requirement in S.C.Code Ann. § 42-1-160 (1985). In other words, under the majority's analysis, if an injury is found not to "arise out of" employment, it may still be compensable if it falls under one of these exceptions. Second, by characterizing workers' compensation law in this manner, the majority creates an overly restrictive standard for determining whether an injury "arises out of and in the course of" employment.

Pursuant to section 42-1-160, all injuries, to be compensable, must be by accident arising out of and in the course of employment. The two parts of the phrase "arising out of and in the course of" are not synonymous, but both must exist simultaneously before any court will allow recovery. *Branch v. Pacific Mills*, 205 S.C. 353, 32 S.E.2d 1 (1944). This is the starting point for analyzing any workers' compensation claim.

_____

an ensuing injury compensable. *See Beam v. State Workmen's Compensation Fund*, 261 S.C. 327, 200 S.E.2d 83 (1973) (emphasis supplied) (employment connection may be supplied by varying degrees of employer encouragement or direction.... It is ... sufficient if attendance, although not compulsory, is definitely urged or expected but **not if it is merely encouraged**). Here, the evidence reflects, at best, the school acquiesced in employees obtaining ice for their personal use.

*See Owings v. Anderson County Sheriff's Dep't,* 315 S.C. 297, 433 S.E.2d 869 (1993). We have liberally construed this language and allowed compensation in a variety of cases including on the job injuries suffered while the employee was engaged in personal comfort activities, as well as other acts outside an employee's regular duties.[1]

Commentators, like Professor Larson, have categorized these compensable personal activities in an attempt to provide practical guidance. Such categories, however, are not exceptions to the "arising out of" requirement in section 42–1–160. They are instead devices for determining whether an injury does in fact "arise out of and in the course of" employment. *See, e.g., Mack v. Branch No. 12, Post Exchange,* 207 S.C. 258, 264, 35 S.E.2d 838, 840 (1945) ("Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof *is deemed to have arisen out of the employment.*") (emphasis added). These categories also reflect the degree of flexibility with which courts have interpreted this statutory language.

An injury "arises out of" employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal relationship between the conditions under which the work is to be performed and the resulting injury. *Owings,* 315 S.C. 297, 433 S.E.2d 869. The majority concludes there is no causal connection between Osteen's employment and her injury because her employment in no way required her to be placing a chest full of ice into the trunk of her

---

1. For example, in *McCoy v. Easley Cotton Mills,* 218 S.C. 350, 62 S.E.2d 772 (1950), we utilized the personal comfort doctrine in concluding that an employee's accident arose out of and in the course of his employment even though the injury occurred when the employee walked outside to smoke a cigarette. Additionally, in *Howell v. Kash & Karry,* 264 S.C. 298, 301, 214 S.E.2d 821, 822 (1975), we stated that "[a]n act outside an employee's regular duties which is undertaken in good faith to advance the employer's interest, whether or not the employee's own assigned work is thereby furthered, is within the course of employment." The injury in *Howell* occurred while the employee was chasing two boys who had stolen a customer's purse. It was not part of the employee's regular duties to chase potential thieves. We nevertheless held that the injury was by accident arising out of and in the course of employment.

vehicle. Under this rigid formulation of "arising out of," only those activities specifically required by the employment would be compensable. Such a standard is impractical and effectively overrules those cases where we have allowed compensation, even though the activity was not specifically required by the employment. *E.g., Howell v. Kash & Karry,* 264 S.C. 298, 214 S.E.2d 821 (1975) (found compensable where employee was injured while chasing two boys who had stolen a customer's purse); *Sexton v. Freeman Gas Co.,* 258 S.C. 15, 187 S.E.2d 128 (1972) (found compensable where employee was injured while driving company truck to help put out brush fire); *Portee v. South Carolina State Hosp.,* 234 S.C. 50, 106 S.E.2d 670 (1959) (found compensable where employee was injured while seeking medication for a sore throat).

The fact is there is no case in South Carolina that gives meaningful guidance to resolving the question of compensation under the unique facts of this case. Therefore, I would seek guidance from the North Carolina Supreme Court. *See McDowell v. Stilley Plywood Co.,* 210 S.C. 173, 181, 41 S.E.2d 872, 876 (1947) ("Our Workmen's Compensation Act having been fashioned to the North Carolina Workmen's Compensation Act, and practically a copy thereof, the opinions of the Supreme Court of that State construing such Act are entitled to great respect.").[2] In construing the phrase "arising out of and in the course of," the North Carolina Supreme Court has set forth the following test:

> The rule applicable when the employee has been directed, *as part of his duties,* to remain in a particular place or locality until directed otherwise or for a specified length of time, has been well stated ... as follows: In those circum-

2. Since *McDowell,* this Court and our Court of Appeals have continued to follow the practice of relying upon the North Carolina Supreme Court for guidance in construing our workers' compensation laws. *See Nolan v. Daley,* 222 S.C. 407, 73 S.E.2d 449 (1952); *Flemon v. Dickert–Keowee, Inc.,* 259 S.C. 99, 190 S.E.2d 751 (1972); *Carter v. Penney Tire & Recapping Co.,* 261 S.C. 341, 200 S.E.2d 64 (1973); *Hines v. Hendricks Canning Co.,* 263 S.C. 399, 211 S.E.2d 220 (1975); *Holley v. Owens Corning Fiberglas Corp.,* 301 S.C. 519, 392 S.E.2d 804 (Ct.App. 1990); *Adams v. Texfi Indus.,* 320 S.C. 213, 464 S.E.2d 109 (1995); *Stephen v. Avins Const. Co.,* 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996); *Harding v.. Plumley,* 329 S.C. 580, 496 S.E.2d 29 (Ct.App.1998).

stances, the rule applied is simply that the employee is not expected to wait immobile, but may indulge in any *reasonable* activity at that place, and if he does so the risk inherent in such activity is an incident of his employment.

*Watkins v. City of Wilmington,* 290 N.C. 276, 225 S.E.2d 577, 581 (N.C.1976).

In *Watkins,* a fireman injured himself while repairing a car during working hours. In concluding the fireman's activity was reasonable, the court found the following facts determinative: the fireman was required, as part of his duties, to remain at the fire station during working hours; the attempted repair to the car was minor; the practice of firemen repairing their automobiles at work was well known to and permitted by the firemen's superiors; and allowing the firemen to make repairs benefited the fire department in that by keeping their automobiles in working condition the firemen could report to duty when they were off duty, in case of an emergency. *Id.* at 583.

In this case, Osteen was expected, as part of her duties, to stay on school premises the entire working day, including her lunch hour. The practice of employees getting ice from the cafeteria for personal use was well known to and permitted by her supervisor. Moreover, Osteen's excursion was brief and near the end of her working day. Her supervisor testified that Osteen's activity would not have interfered with her job. Finally, by acquiescing in this conduct, the school was benefited with improved employer/employee relations. I would therefore find that Osteen's act of obtaining cafeteria ice for personal use was a reasonable activity, and the risk inherent in such activity was an incident of her employment. As such, I would hold that Osteen's injury was by accident arising out of and in the course of her employment and therefore compensable.

For the foregoing reasons, I respectfully dissent.

BURNETT, J., concurs.