603 S.E.2d 858

**Charles Christopher GRANT, Claimant, Respondent,**

v.

**GRANT TEXTILES, Employer, and U.S. Fire Insurance Company, Carrier, Appellants.**

No. 3861.

Court of Appeals of South Carolina.

Heard June 8, 2004.

Decided Sept. 7, 2004.

Rehearing Denied Oct. 21, 2004.

Steven L. Brown and Robert P. Gruber, both of Charleston, for Appellants.

Richard H. Rhodes and Ray E. Thompson, Jr., both of Spartanburg, for Respondent.

STILWELL, J.

Grant Textiles and its insurer, U.S. Fire Insurance Company, appeal the circuit court's order reversing the decision of the full commission and finding Charles Grant's injuries compensable under the South Carolina Workers' Compensation Act. We reverse and reinstate the full commission's decision.

## FACTS

Grant is the Vice–President of Grant Textiles, where he is responsible for selling textile machinery parts. On the day of the accident, Grant drove to the Clinton House and Meeting Plantation, a private hunting preserve and meeting center owned individually by him, to deliver bobbin samples to customers of Grant Textiles who were staying there. Grant Textiles has a corporate membership at the Clinton House and, although its customers are occasionally guests of the Clinton House, the company has no ownership interest in the facility.

As he approached the entrance gate to the Clinton House, Grant and another motorist abruptly swerved to miss an object in the roadway. Grant testified he was concerned the object created a safety hazard to guests traveling to and from the Clinton House. On his arrival, Grant alerted the manager

of the Clinton House to the obstacle, and both men walked back down the highway to attempt to remove it. As Grant walked along the shoulder of the road, a pickup truck swerved off the road while attempting to pass a car, and struck Grant from behind. As a result, he suffered bruising to the right side of his body and severe injury to his right arm.

The single commissioner found Grant's injuries arose out of his employment with Grant Textiles and awarded compensation for his claim. The full commission reversed, finding Grant's accident had no causal connection with his employment. The full commission also found Grant's ordinary job duties did not require him to remove debris from the roads and his job duties and responsibilities were in no way related to road maintenance. The circuit court reversed the full commission, concluding the injuries were compensable.

## STANDARD OF REVIEW

A reviewing court will not overturn a decision by the Workers' Compensation Commission unless the determination is unsupported by substantial evidence or is affected by an error of law. *Dukes v. Rural Metro Corp.*, 356 S.C. 107, 109, 587 S.E.2d 687, 688 (2003). "Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached to justify its action." *Howell v. Pacific Columbia Mills*, 291 S.C. 469, 471, 354 S.E.2d 384, 385 (1987). The question of whether an accident arises out of and in the course and scope of employment is largely a question of fact for the full commission. *Grice v. National Cash Register Co.*, 250 S.C. 1, 3, 156 S.E.2d 321, 322 (1967). However, where the facts are undisputed, the question of whether an accident is compensable is a question of law. *Gibson v. Spartanburg Sch. Dist. No. 3*, 338 S.C. 510, 517, 526 S.E.2d 725, 729 (Ct.App. 2000).

## DISCUSSION

Grant may recover workers' compensation benefits only if he sustained an "injury by accident arising out of and in the course of the employment." S.C.Code Ann. § 42–1–160 (Supp.2003). An injury arises out of one's employment "when

there is a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Broughton v. S. of the Border,* 336 S.C. 488, 497, 520 S.E.2d 634, 638 (Ct.App.1999). Although the injury need not be expected or even foreseeable, it must appear to have originated in an employment-related risk and be a rational consequence of that risk. *Carter v. Penney Tire & Recapping Co.,* 261 S.C. 341, 345, 200 S.E.2d 64, 65 (1973) (citations omitted).

Grant was a senior executive at his family-owned textile supply company where he was principally involved with sales. In fact, according to his own testimony he would have engaged in sales activity with his customers at Clinton House on the day of the accident had he not returned to the highway to remove the obstacle in the road. He admitted his job duties and responsibilities with Grant Textiles did not include removing debris from the public highway.

■ As the sole finder of fact, the full commission found that Grant's injuries did not arise out of his employment with Grant Textiles because the cause of the accident had no relation to his employment duties. "The question of whether an accident arises out of and is in the course and scope of employment is largely a question of fact for the Full Commission." *Broughton,* 336 S.C. at 496, 520 S.E.2d at 638; *see also Gibson v. Spartanburg Sch. Dist. No. 3,* 338 S.C. 510, 518, 526 S.E.2d 725, 729 (Ct.App.2000).

Based on that finding of fact, the full commission reached the legal conclusion that Grant's accident and resulting injuries had no causal connection to his employment with Grant Textiles. The factual findings made by the full commission are supported by substantial evidence. Thus, Grant's claim is not compensable as a matter of law. *See Douglas v. Spartan Mills,* 245 S.C. 265, 140 S.E.2d 173 (1965) (holding "an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which [one] would have been equally exposed apart from the employment" cannot be said to arise out of the claimant's employment).

We therefore conclude the trial court erred in reversing the commission's decision. Accordingly, the trial court's ruling is reversed, and the full commission's ruling is reinstated.

**REVERSED.**

CURETON, A.J., concurs.

HEARN, C.J., dissents in a separate opinion.

HEARN, C.J., dissenting.

I respectfully dissent from the majority's determination that Grant's injury is not compensable under South Carolina Workers' Compensation Law. I would hold that Grant's injury is compensable because it arose out of and in the course of his employment.

The majority bases its decision largely upon what it perceives to be our limited standard of review. While I agree that the question of whether an accident arises out of and in the course of employment is largely one of fact, here there are no material facts in dispute.[1] Thus, the question of whether the accident is compensable is a question of law. *See Gibson v. Spartanburg Sch. Dist. No. 3*, 338 S.C. 510, 517, 526 S.E.2d 725, 729 (Ct.App.2000).

Despite the fact that Grant owns the Clinton House, the only reason Grant drove to the Clinton House on the day of the accident was to deliver sample bobbins to customers of

1. When asked during oral argument which facts were in dispute, the attorney for Grant Textiles pointed to conflicting testimony concerning the distance between the entrance of the Clinton House and the accident. Grant testified that he believed the obstacle was fifty feet down the road, but "it may have been further." The trooper from the highway patrol who investigated the accident testified that "seeing as how both parties had left the scene, [he] was not one hundred percent certain exactly where [the accident] took place." The trooper further testified that, 325 feet from the entrance of the Clinton House, he found a pair of glasses on the side of the road. While the testimony from Grant and the trooper did not coincide exactly, both of their descriptions indicate that the accident took place in close proximity to the entrance of the Clinton House. Thus, any difference in their testimony is immaterial. Furthermore, when this case was presented to the circuit court, Grant's attorney stated twice that the facts were not in dispute, and the attorney for Grant Textiles never objected to that or pointed out any facts that *were* disputed.

Grant Textiles. Grant's father, who is the president of Grant Textiles, was already at the Clinton House meeting with those customers.

As described in the majority's opinion, as Grant approached the Clinton House, he had to swerve out of his lane in order to avoid debris in the road. After successfully maneuvering around the hazard, Grant left his truck idling in the entrance-way of the Clinton House and walked back down the highway to remove the debris from the road. Although removing debris from the highway was certainly not one of his regular duties as vice-president of Grant Textiles, Grant explained that, on this occasion, he felt that he did have an obligation to remove the hazard. Specifically, Grant testified:

> [T]o me that right there was a safety issue because I had to come out of the road [in order to avoid the obstacle] and ended up right there at the driveway [of the Clinton House]. And I had some customers going and coming. I had some customers coming in that evening. And me and my father was [sic] leaving. If you travel as much as I do and see some accidents, you know, I thought I was doing the right thing.

By attempting to remove the debris from the road, Grant was trying to ensure that the customers, his father (a co-worker), and he could safely travel to and from the Clinton House.

For an injury to be compensable under the South Carolina Workers' Compensation Law, it must both arise out of and be in the course of the employment. *Osteen v. Greenville County Sch. Dist.*, 333 S.C. 43, 49, 508 S.E.2d 21, 24 (1998). The phrase "arising out of" refers to the causal origin of the injury, whereas the phrase "in the course of" refers to the injury's time, place, and circumstance. *Id.* at 50, 508 S.E.2d at 24. In *Hiers v. Brunson Construction Co.*, our supreme court explained:

> '[I]f in the course of [a worker's] employment an emergency arises and, without deserting his employment, [the worker] does what he thinks necessary for the purpose of advancing the work in which he is engaged in the interest of his employer, and in so doing he suffers injury, the accident may properly be regarded as arising out of the employment.'

221 S.C. 212, 234–235, 70 S.E.2d 211, 222 (1952) (quoting 58 Am.Jur. 764). Furthermore, in *Osteen v. Greenville County School District*, 333 S.C. 43, 48, 508 S.E.2d 21, 24 (1998), the supreme court recognized that our state has "adopted Professor Larson's view that there are circumstances when injuries arising out of acts outside the scope of an employee's regular duties may be compensable." The court explained that "[t]hese circumstances have been applied to: (1) acts benefiting co-employees; (2) acts benefiting customers or strangers; (3) acts benefiting claimant; and (4) acts benefiting [the] employer privately." *Id.* at 48–49, 508 S.E.2d at 24 (citing Larson, §§ 27.00–27.48) (internal footnote omitted).

In the case before us, the undisputed facts indicate that the time, place, and scope of Grant's duties as an employee of Grant Textiles brought him immediately in contact with a dangerous situation. The undisputed facts also show that Grant attempted to remove the debris from the road in order to ensure that he, his co-employee, and the customers of Grant Textiles could safely travel to and from the Clinton House. Thus, Grant's injury arose out of and in the course of his employment. *Osteen*, 333 S.C. at 48–49, 508 S.E.2d at 24.

The supreme court's decision in *Howell v. Kash & Karry*, 264 S.C. 298, 214 S.E.2d 821 (1975), lends further support to awarding Grant benefits. In *Howell*, an employee of a grocery store was injured when he chased down two boys who had snatched a purse from a woman in the parking lot. The supreme court acknowledged that chasing thieves was not part of the employee's regular duties, but ultimately concluded the employee's injuries arose out of and in the course of his employment. In reaching this conclusion the court explained that "awards have been upheld for injuries occurring in the course of miscellaneous Good Samaritan activities by employees, on the theory that the employer ultimately profited as a result of the good will thus created." *Id.* at 301–302, 214 S.E.2d at 822. Like the grocery store employee in *Howell*, the time, place, and scope of Grant's actual duties brought him immediately in contact with a situation that was dangerous to his employer's customers. While clearing debris from the highway was not a part of Grant's regular duties, his attempt to rectify a dangerous situation was a Good Samaritan act similar to the grocery store clerk's actions in *Howell*. There-

fore, I would affirm the circuit court's decision to award Grant benefits.