# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Ex Parte: Robert Horne, as Personal Representative of the Estate of Gus A. King, and Laura King, Appellants,

In Re: Gus A. King, Claimant, Appellant,

v.

Pierside Boatworks, Employer, and PMA Insurance Group, Carrier, Respondents.

Appellate Case No. 2018-001294

———————

Appeal From The Workers' Compensation Commission

———————

Opinion No. 5929
Heard May 11, 2022 – Filed August 3, 2022

———————

## REVERSED AND REMANDED

———————

J. Gary Christmas and Reese M. Stidham, IV, of Christmas Injury Lawyers, LLC, and Paul J. Doolittle, of Anastopoulo Law Firm, LLC, all of Mount Pleasant, for Appellant Gus A. King. Allison P. Sullivan, of Bluestein Thomas Sullivan, LLC, of Columbia, for Appellants Robert Horne and Laura King. Andrew N. Safran, of Andrew N. Safran, LLC, of Columbia, for all Appellants.

Richard Daniel Addison, of Hall Booth Smith, PC, of Mount Pleasant, for Respondents.

———————

**THOMAS, J.:**  Robert Horne, as Personal Representative for the Estate of Gus A. King, Laura King, and Gus A. King (collectively, Appellants) appeal an order of the Workers' Compensation Commission (the Commission).  Appellants argue the Commission erred in finding the agreement the parties signed at mediation was not enforceable.  We reverse and remand.

**FACTS**

On November 18, 2011, Gus A. King (King) was injured while at work.  On May 20, 2014, the Commission awarded him permanent and total disability benefits, which were paid in a lump sum on September 10, 2014, and medical benefits for the remainder of his life.  On June 2, 2016, Pierside Boatworks and PMA Insurance Group (collectively, Respondents) and King attended mediation.  Mediation was successful, and the parties agreed to settle King's claim regarding his future medical benefits and signed a document titled "Agreement Following Mediation Conference" (the Agreement).  The Agreement was signed by King, King's attorney, Respondents, Respondents' attorney, and the mediator.  On the same day, the mediator filed a Form 70, stating the issues were settled at mediation and Respondents "shall submit the Final Agreement [and] Release, Consent Order, Form 16A, or other appropriate documentation regarding the agreement to the Commission."

Seven days after mediation, on June 9, 2016, King died in an unrelated car accident.  The same day, Respondents sent King's attorney a letter with the settlement check, indicating they were in the process of finalizing the Agreement and Final Release but "wanted to get [the] check to [him] so that [he could] place [it] in [his] trust account pending completion of th[e] settlement."  Respondents stated the check "represent[ed] a full and final settlement of all claims" and requested King's attorney hold the check until the Commission informed them the Agreement and Final Release were approved.[1]  Five days later, Respondents informed King's attorney they had stopped payment on the check and put the settlement on hold while they considered how King's death affected the "un-finalized settlement."  Respondents later withdrew from the settlement because they believed King's claim abated at his death.  Respondents never filed an Agreement and Final Release with the Commission.

King's attorney moved to file the Agreement.  At the Commission's direction, he

---

[1]  We do not agree that an approval of the Agreement by the Commission was necessary.

filed a Form 50, in which he requested the Agreement be filed and enforced by the Commission. Horne, on behalf of King's estate, and Laura, as King's beneficiary, also filed a Form 50, arguing the Agreement should be enforced. Respondents filed a Form 51, stating they "reached a tentative agreement on settling" King's rights to future medical care costs related to his compensable injuries, but they never completed, signed, or filed a formal order or consent order; therefore, King's claim ended upon his death.

The parties filed briefs and memoranda of law prior to a hearing. After the hearing, the Single Commissioner concluded the Agreement was not enforceable because King never executed or signed an Agreement and Final Release, resulting in one never being filed with the Commission in accordance with section 42-9-390 of the South Carolina Code (2015) and state regulations. The Single Commissioner found a mediation agreement was not synonymous with an Agreement and Final Release and state regulations regarding mediation did not indicate a mediation agreement was binding once signed. She relied on *Mackey v. Kerr-McGee Chemical Co.*, 280 S.C. 265, 312 S.E.2d 565 (Ct. App. 1984), which found a party could withdraw from an agreement until it was approved by the South Carolina Industrial Commission.

Appellants appealed the Single Commissioner's order to the Commission, arguing the Single Commissioner erred in several aspects. The Commission affirmed the Single Commissioner's order in full and adopted the Single Commissioner's findings of fact and conclusions of law. This appeal followed.

**STANDARD OF REVIEW**

The South Carolina Administrative Procedures Act establishes the standard for judicial review of decisions of the Commission. S.C. Code Ann. § 1-23-380 (Supp. 2021); *Grant v. Grant Textiles*, 372 S.C. 196, 200, 641 S.E.2d 869, 871 (2007). "Although we may not substitute our judgment for that of the full [C]ommission as to the weight of the evidence on questions of fact, we may reverse where the decision is affected by an error of law." *Grant*, 372 S.C. at 200, 641 S.E.2d at 871. Our "[r]eview is limited to deciding whether the [C]ommission's decision is unsupported by substantial evidence or is controlled by some error of law." *Id.* at 201, 641 S.E.2d at 871.

**LAW/ANALYSIS**

Appellants argue the Commission erred in finding the Agreement the parties signed at mediation is not enforceable.  We agree.

Section 42-9-390 of the Workers' Compensation Act, which discusses voluntary settlements, currently provides:

> Nothing contained in this chapter may be construed so as to prevent settlements made by and between an employee and employer as long as the amount of compensation and the time and manner of payment are in accordance with the provisions of this title.  The *employer must file a copy of the settlement agreement with the commission* if each party is represented by an attorney.  If the employee is not represented by an attorney, a copy of the settlement agreement must be filed by the employer with the commission and approved by one member of the commission.

S.C. Code Ann. § 42-9-390 (2015) (emphasis added).

Prior to a 2007 amendment, section 42-9-390 provided:

> Nothing contained in this chapter may be construed so as to prevent settlements made by and between an employee and employer so long as the amount of compensation and the time and manner of payment are in accordance with the provisions of this title.  A copy of the settlement agreement *must be filed by the employer with and approved by only one member of the commission* if the employee is represented by an attorney.  If the employee is not represented by an attorney, a copy of the settlement agreement must be filed by the employer with and approved by four members of the commission.

S.C. Code Ann. § 42-9-390 (Supp. 2006) (emphasis added).  The relevant difference between the pre-amendment version of the statute and the present one is that the current version no longer requires the Commission's approval of a settlement agreement when both parties are represented by counsel.  It simply requires the employer to file a copy of the settlement agreement with the Commission.

In *Mackey*, a 1984 case decided prior to the 2007 amendment to section 42-9-390, this court held the workers' compensation settlement agreement in that case was not binding until it had been approved by the Industrial Commission, and thus, prior to such approval, Mackey could unilaterally repudiate the settlement offer that had been accepted by his attorney. 280 S.C. 265, 269-70, 312 S.E.2d 565, 567-68 (Ct. App. 1984). The court noted "[a]lthough voluntary settlements between the employer or its carrier and the claimant are encouraged under [worker's] compensation law, § 42-9-390 specifically requires approval by the Commission of such settlements." *Id.* at 268, 312 S.E.2d at 567 (second alteration in original).

Appellants argue the Commission erred in finding the Agreement is not enforceable because the amended version of section 42-9-390 no longer requires the Agreement be approved by the Commission if both parties are represented by counsel. They maintain the mandatory filing of the agreement simply ends the case. Appellants note the mediator's filing of the Form 70, which reports the result of mediation, lends support to their argument. Appellants assert the Commission erred in finding *Mackey* controlled because *Mackey* dealt with the previous version of the statute and is factually distinguishable.

We agree with Appellants and find that because the amended version of section 42-9-390 no longer requires Commission approval of settlement agreements if both parties are represented by counsel, the Agreement in this case only had to be filed with the Commission by Respondents, which was simply a perfunctory act. Although the statutory amendments to section 42-9-390 were made 23 years after *Mackey* was decided, we presume the legislature was aware of *Mackey* when removing the requirement of approval by the Commission and intended to promote the use of settlement agreements. *See* S.C. Code Ann. § 42-9-390 ("Nothing contained in this chapter may be construed so as to prevent settlements made by and between an employee and employer . . . .").

From the record, it appears to us the only reason Respondents did not file the Agreement with the Commission was because King unexpectedly died. Neither side provided testimony or evidence that either side had expressed a desire to withdraw from the Agreement after it was signed by all parties. In fact, King's attorney filed a motion requesting permission to file the Agreement and a Form 50 requesting the Agreement be filed with and enforced by the Commission. The Agreement language provided the case was "fully and completely resolved by agreement." The same day the parties signed the Agreement, the mediator filed a

Form 70, stating the issues were settled and Respondents will submit "documentation regarding the agreement to the Commission." Respondents had already written the $1,000,000 settlement check to King on June 4 and mailed it to King's attorney. Although the accompanying letter stated Respondents were "in the process of finalizing the Agreement and Final Release," it also provided the check amount represented "a full and final settlement of all claims in this matter." Thus, there was nothing left for the parties to decide. We find the parties substantially complied with the statute, and their actions satisfied the reasonable objectives of the of the amended statute. *See S.C. Dep't of Consumer Affs. v. Cash Cent. of S.C. LLC*, 435 S.C. 192, 206, 865 S.E.2d 789, 796 (Ct. App. 2021), *cert. pending* ("Substantial compliance has been defined as 'compliance in respect to the essential matters necessary to assure every reasonable objective of the statute.'" (quoting *Brown v. Baby Girl Harper*, 410 S.C. 446, 453 n.6, 766 S.E.2d 375, 379 n.6 (2014)); *Thrash v. City of Asheville*, 393 S.E.2d 842, 845 (N.C. 1990) ("Substantial compliance means compliance with the essential requirements of the Act."); *Quality Towing, Inc. v. City of Myrtle Beach*, 345 S.C. 156, 164-65, 547 S.E.2d 862, 866 (2001) (looking to the "clear language and the express purpose" of an act to determine whether substantial compliance occurred); *Davis v. NationsCredit Fin. Servs. Corp.*, 326 S.C. 83, 86, 484 S.E.2d 471, 472 (1997) (viewing the purpose of a statute in determining whether substantial compliance occurred). Further, we find legislative intent disfavoring abatement in section 42-9-280 of the South Carolina Code (2015), which provides:

> When an employee receives or is entitled to compensation under this title for an injury covered by the second paragraph of Section 42-9-10 or 42-9-30 and dies from any other cause than the injury for which he was entitled to compensation, payment of the unpaid balance of compensation shall be made to his next of kin dependent upon him for support, in lieu of the compensation the employee would have been entitled to had he lived.

*See generally McMahan v. S.C. Dep't of Educ.-Trans.*, 417 S.C. 481, 492, 790 S.E.2d 393, 399 (Ct. App. 2016) ("We find it would be absurd to preclude McMahan's widow from receiving compensation to which she is otherwise entitled solely because McMahan happened to die before the parties adjudicated McMahan's workers' compensation claim with finality."); *id.* (applying section 42-9-280 and holding "any different conclusion would run afoul of legislative intent"). Finally, we note that "[w]orkers' compensation law is to be liberally construed in

favor of coverage in order to serve the beneficent purpose of the Workers' Compensation Act; only exceptions and restrictions on coverage are to be strictly construed." *Nicholson v. S.C. Dep't of Soc. Servs.*, 411 S.C. 381, 385, 769 S.E.2d 1, 3 (2015). Therefore, we find Respondents were required to file the Agreement with the Commission regardless of King's untimely death.

**CONCLUSION**

Accordingly, we reverse and remand to the Commission to enforce the Agreement.

**GEATHERS and MCDONALD, JJ., concur.**